UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

SHERRY  REYNOLDS,                          )
                                           )
                        Plaintiff,         )
                                           )
                vs.                        )        No. 1:14-cv-01868-JMS-DML
                                           )
EOS CCA,                                   )
U.S. ASSET MANAGEMENT, INC.,               )
                                           )
                        Defendants.        )

## ORDER

Presently pending before the Court in this action brought under the Fair Debt Collection

Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, is Plaintiff Sherry Reynolds' Motion for

Summary Judgment.  [Filing No. 46.][1]

## I.
### STANDARD OF REVIEW

A motion for summary judgment asks the Court to find that a trial is unnecessary because

there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment

as a matter of law.  *See* Fed. R. Civ. P. 56(a).  Whether a party asserts that a fact is undisputed or

genuinely disputed, the party must support the asserted fact by citing to particular parts of the

record, including depositions, documents, or affidavits.  Fed. R. Civ. P. 56(c)(1)(A).  A party can

also support a fact by showing that the materials cited do not establish the absence or presence of

---

[1] Ms. Reynolds' counsel filed a factually similar complaint on behalf of a different plaintiff, Thomas Reed, in a separate case against Defendant EOS CCA ("EOS").  *See Reed v. EOS CCA,* No. 1:14-cv-01745-JMS-DKL (S.D. Ind.).  Mr. Reed filed a motion for summary judgment in his case, raising the same issues that Ms. Reynolds raises in her pending motion.  Consequently, the Court is contemporaneously issuing an Order in *Reed* that is substantially similar to this Order.

1

a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed. 202 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that

they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson*, 325 F.3d at 898. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

## II.
### STATEMENT OF FACTS

In 2004, Ms. Reynolds contracted with Cingular Wireless for cell phone service. [Filing No. 47-1 at 1.] At some point in the future, AT&T Mobility acquired Cingular Wireless, and AT&T Mobility continued to provide Ms. Reynolds with cell phone service. [Filing No. 47-1 at 1.] Ms. Reynolds never signed an agreement with AT&T Mobility regarding her cell phone service, and never indicated that she agreed to any "terms of service" with AT&T Mobility. [Filing No. 47-1 at 1.] When Ms. Reynolds missed, and eventually stopped making, payments on her AT&T Mobility account, AT&T Mobility did not apply interest to the unpaid amounts. [Filing No. 47-1 at 2.] Additionally, AT&T Mobility never informed Ms. Reynolds that she could be responsible for collection costs for unpaid amounts. [Filing No. 47-1 at 2.]

In August of 2012, Defendant U.S. Asset Management, Inc. ("U.S. Asset Management") purchased Ms. Reynolds' AT&T Mobility account and approximately two million more "charged-off" accounts from AT&T Mobility. [Filing No. 47-2 at 5; Filing No. 47-4.] U.S. Asset Management subsequently hired Defendant EOS to collect unpaid amounts on Ms. Reynolds' AT&T Mobility account. [Filing No. 47-2 at 6.]

On April 4, 2014, EOS sent Ms. Reynolds a letter on behalf of U.S. Asset Management, stating that Ms. Reynolds owed $1,042.84 in principal on her AT&T Mobility account, $353.95 in interest, and $187.72 in fees/collection costs, for a total owed of $1,584.51. [Filing No. 47-5.]

The letter stated that U.S. Asset Management had "authorized…resolution to your balance" for a lump sum settlement payment of $792.26.  [Filing No. 47-5.]

Defendants' corporate representative,[2] John Burns, testified that interest on the account had been accruing since September 25, 2009.  [Filing No. 47-2 at 15.]  Mr. Burns also testified that the IT department at EOS applied the interest on Ms. Reynolds' account (at 8 percent), and also applied the collection costs.  [Filing No. 47-2 at 12.]  He further testified that neither U.S. Asset Management nor EOS received the original Cingular Wireless contract signed by Ms. Reynolds, nor any documentation with Ms. Reynolds' signature, when they purchased her account from AT&T Mobility.  [Filing No. 47-2 at 10-11.]  Mr. Burns also testified that neither EOS nor U.S. Asset Management have any documents indicating that Ms. Reynolds agreed to the AT&T Mobility terms of service.  [Filing No. 47-2 at 18-22.]

Ms. Reynolds filed her Complaint in this matter on November 14, 2014, alleging that Defendants violated §§ 1692d, 1692e, and 1692f of the FDCPA "when they sent dunning letters to [her] attempting to collect interest that was not in the original contract, and thus…attempting to collect an amount not authorized or permitted by the original agreement creating the debt."  [Filing No. 1 at 3-4.]  Ms. Reynolds seeks actual damages under 15 U.S.C. § 1692k(a)(1), statutory damages under 15 U.S.C. § 1692k(a)(2)(A), and reasonable attorneys' fees and costs under 15 U.S.C. § 1692k(a)(3).  [Filing No. 1 at 4.]

### III.
### DISCUSSION

Congress enacted the FDCPA to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection

---

[2] EOS is now known as "EOS USA," and owns U.S. Asset Management.  [Filing No. 47-2 at 3.]

practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692. Ms. Reynolds sets forth three main arguments in support of her Motion for Summary Judgment: (1) that Defendants violated the FDCPA when they sent the April 4, 2014 letter attempting to collect interest and collection costs not provided in the contract; (2) that AT&T Mobility waived any application of interest and collection costs, and so Defendants are estopped from seeking them; and (3) that Defendants' failure to properly compute the interest allegedly due on her account, and to subsequently modify the interest rate without notice, violates the FDCPA. [Filing No. 47 at 9-20.]

### A. FDCPA Violations for Attempting to Collect Interest and Collection Costs Not Provided in the Contract

Ms. Reynolds argues that Defendants violated the FDCPA by attempting to collect interest and collection cost not provided for in any contract between her and AT&T Mobility. Ms. Reynolds states that Defendants "do not have any documentation signed by Ms. Reynolds in which she agreed to be responsible for interest and collection costs on her old AT&T Mobility account." [Filing No. 47 at 9.] Therefore, Ms. Reynolds contends that "by applying collection costs and interest to [her] account, Defendants are misleading Ms. Reynolds that these extraneous amounts are legally owed by her." [Filing No. 47 at 9.] Ms. Reynolds argues that neither U.S. Asset Management nor EOS possess any signed contracts or have record of her original contract. [Filing No. 47 at 10-11.] Ms. Reynolds contends that Mr. Burns also was not able to determine whether the AT&T Terms of Service provided by EOS during discovery applied to Ms. Reynolds. [Filing No. 47 at 11-12.] Ultimately, Ms. Reynolds contends that the "2009 AT&T Terms of Service" are not applicable because she signed her cell phone contract prior to 2009 and her account was charged off in 2009. [Filing No. 47 at 11-12.] Thus, without any legal basis to charge and collect

interest or collection costs, Ms. Reynolds argues that Defendants violated the FDCPA.  [Filing No. 47 at 12.]

In response, Defendants do not present any further evidence, but use Ms. Reynolds' own statements to rebut her position.[3]  First, Defendants attempt to establish the presence of a contract through Ms. Reynolds' admission that she entered into a contract with Cingular Wireless.  [Filing No. 57 at 6.]  Defendants argue that Ms. Reynolds admits that she had been using her cellular service even after knowing her plan had switched to AT&T Mobility and receiving monthly bills from AT&T Mobility.  [Filing No. 57 at 6.]  Defendants point to a provision in AT&T Mobility's Terms of Service which states:

> If you decide to terminate because you object to the Terms of this Agreement, return any handsets or accessories in accordance with the Cancellation Period/Termination provision below AND, in order to have any restocking fee returned, send a letter as described in the Cancellation Period/Termination provision within 15 days.

[Filing No. 57 at 6 (quoting Filing No. 47-7 at 2) (emphasis omitted).]  Defendants contend that "[s]uch terms of service would have been provided at the time the service was activated."  [Filing No. 57 at 7.]  Defendants assert that Ms. Reynolds' admitted and continued usage of the phone service constitutes assent to the AT&T Mobility terms of service. [Filing No. 57 at 7.]  Thus, arguing the terms of service are binding, Defendants point to a second provision in the terms of service which allows for the collection of late payments:

> You agree to reimburse us the fees of any collection agency, which may be based on a percentage at a maximum of 33% of the debt, and all costs and expenses, including reasonable attorney's fees, we incur in such collection efforts.

---

[3] Defendants do not differentiate between U.S. Asset Management and EOS.  For example, they do not discuss whether U.S. Asset Management, as a debt buyer, can be held liable for an FDCPA violation.  The Court will follow Defendants' lead, and refer to U.S. Asset Management and EOS collectively, as "Defendants."

> You agree that for amounts not paid by the due date, AT&T may charge, as a part of its rates and charges, and you agree to pay, a late payment fee of $5 in CT, D.C., DE, IL, KS, MA, MD, ME, MI, MO, NH, NJ, NY, OH, OK, PA, RI, VA, VT, WI, WV; the late payment charge is 1.5% of the balance carried forward to the next bill in all other states.

[Filing No. 57 at 7 (quoting Filing No. 47-7 at 10; Filing No. 47-7 at 13).]   Additionally, Defendants attempt to justify the 8% interest rate imposed on Ms. Reynolds' outstanding charges by citing Indiana Code § 24-4.6-1-103, which allows for accrual of interest from "the date an itemized bill shall have been rendered and payment demanded on an…account closed." [Filing No. 57 at 9.]

On reply, Ms. Reynolds contends that Defendants misquote her affidavit, rely on language not present in the record, cite to incorrect documents, provide no evidence to support their position, and cannot provide "admissible evidence that the 'Terms of Service' it references…control in this case." [Filing No. 58 at 2-3.]   Ms. Reynolds rejects Defendants' contention that the AT&T Mobility "2009 Terms of Service" produced by Defendants are binding. [Filing No. 58 at 5.] She states that "[d]efendants fail to provide any evidence under oath that the 'Terms of Service' at issue in this matter is the 'Terms of Service' that applied to Ms. Reynolds' account with AT&T Mobility." [Filing No 58 at 5.]  Ms. Reynolds also notes that "[d]efendants produced more than one 'Terms of Service' during discovery in the case," and emphasizes that Defendants "cannot simply point to an arbitrary 'Terms of Service' agreement and argue that it is the one that applied to Ms. Reynolds' account." [Filing No. 58 at 5.]  Furthermore, Ms. Reynolds rejects Defendants' application of the 8% interest rate pursuant to Indiana Code 24-4.6-1-103 by pointing out that the statute "pertains to the imposition of interest on judgments," and therefore is not applicable in this case. [Filing No. 58 at 6 (emphasis omitted).]

1.  *Whether a Contract Providing for the Imposition of Interest and Collection Costs Existed*

The Seventh Circuit has "consistently held that summary judgment is 'not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events.'" *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005)).  To overcome a motion for summary judgment, the non-moving party must support the asserted facts by citing to particular parts of the record, including depositions, documents, or affidavits.  Fed. R. Civ. P. 56(c)(1)(A).

Here, Defendants have not provided any evidence to the Court which would suggest the presence of a binding contract between Ms. Reynolds and AT&T Mobility that provided for the imposition of interest and collection costs.  In fact, the record evidence suggests that Defendants do not possess such documentation.  During his deposition, Mr. Burns admitted that Defendants do not possess documentation, with Ms. Reynolds' signature, agreeing to any AT&T Mobility terms of service.  [Filing No. 47-2 at 18.]  And, significantly, Mr. Burns could not testify to any degree of certainty that the "2009 Terms of Service" were the same terms of service Ms. Reynolds would have been provided, but could only "assume" that was the case.  [Filing No. 47-2 at 18.] Mr. Burns stated that Defendants relied on a "representation from AT&T that this is a valid account, that the balance is valid, and that the person…was in contract with them, and the terms of that contract provided that the individual would be subject to the service agreement…." [Filing No. 47-2 at 19-20.]  The Court finds that Defendants have not presented sufficient evidence to establish Ms. Reynolds' assent to the "2009 AT&T Terms of Service" or any other contract with AT&T Mobility that authorized the imposition of interest and collection costs.

As the Seventh Circuit has repeatedly assured the district courts, the Court is not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them. *Johnson*, 325 F.3d at 898. Defendants have not produced a valid contract between Ms. Reynolds and AT&T Mobility and, thus, have not established that such a contract – providing for the imposition of interest and collection costs – ever existed between those parties.

### 2.   *FDCPA Violations*

Ms. Reynolds' Complaint sets forth claims for violations of the FDCPA pursuant to 15 U.S.C. §§ 1692d, 1692e, and 1692f. [Filing No. 1 at 4.] Because the issue of whether Defendants have violated § 1692e and § 1692f turns specifically on the validity of the debt, the Court will consider Ms. Reynolds' claims under those sections first.

### a.   **§ 1692e**

15 U.S.C. § 1692e creates a private action against a debt collector who uses "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The FDCPA sets forth non-exhaustive examples of conduct that violates this section, such as "[t]he threat to take any action that cannot legally be taken." *Id.*, § 1692e(5). To determine which actions violate the FDCPA, the Seventh Circuit follows the "unsophisticated consumer" standard. *Lox v. CDA, Ltd.*, 689 F.3d 818, 822 (7th Cir. 2012). The unsophisticated consumer "isn't a dimwit. She may be 'uninformed, naïve, [and] trusting,'…but she has 'rudimentary knowledge about the financial world,' and is 'capable of making basic logical deductions and inferences.'" *Wahl v. Midland Credit Management, Inc.*, 556 F.3d 643, 645 (7th Cir. 2009) (citations omitted). "If a statement would not mislead the unsophisticated consumer, it does not violate the FDCPA – even if it is false in some technical sense." *Id.* at 645-46.

The question of whether debt collectors have violated § 1692e is objective in nature. *Turner v. J.V.D.B. & Associates, Inc.*, 330 F.3d 991, 995 (7th Cir. 2003). The question does not turn on "what the debt collector knew but on whether the debt collector's communication would deceive or mislead an unsophisticated, but reasonable, consumer." *Id.* Furthermore, the FDCPA is a strict liability statute. "[A] consumer need not show intentional conduct by the debtor collector to be entitled to recover damages." *Conner v. Howe*, 344 F.Supp.2d 1164, 1172 (S.D. Ind. 2004); *see also Randolph v. IMBS, Inc.*, 368 F.3d 726, 730 (7th Cir. 2004).

Ms. Reynolds alleges that Defendants' actions of attempting to collect interest and collection costs was misleading. [Filing No. 47 at 9.] As Ms. Reynolds testified, AT&T Mobility did not attempt to collect or add any interest to her account, even after she missed several payments and eventually stopped making payments all together. [Filing No. 47-1 at 1-2.] Furthermore, AT&T Mobility never informed Ms. Reynolds that she could be liable for interest or collection costs. [Filing No. 47-1 at 2.] As discussed above, Defendants cannot affirmatively establish that the "2009 AT&T Mobility's Terms of Service" were applicable to Ms. Reynolds. Other courts have similarly found that "generic" terms of service or parallel agreements do not constitute sufficient evidence to overcome summary judgment in the FDCPA context. *See McCollough v. Johnson, Rodenburg & Lauinger, LLC.*, 637 F.3d 939, 950 (9th Cir. 2011) (granting summary judgment in favor of plaintiff in FDCPA case and stating "the presentation of generic evidence that all [cardmember agreements] contain attorney's fees provisions was insufficient to create a genuine issue of material fact for the jury"); *see also Robinson v. Sherman Financial Group, LLC*, 984 F.Supp.2d 816, 825 (E.D. Tenn. 2013) (denying defendant's summary judgment motion and stating "the HSBC Cardmember Agreement provided by [Defendants] is a generic form and there are no names, signatures, or other personal identifiers to demonstrate this particular document is

in anyway connected to Plaintiff's original agreement with HSBC"). There is nothing in the record which establishes that Ms. Reynolds agreed to, knew about or should have been expecting the imposition of interest and collection costs.

Further, as to the collection of interest, even if Defendants had established that Ms. Reynolds entered into an agreement with AT&T Mobility providing for the recovery of interest on unpaid amounts, their actions still constitute a violation of § 1692e because they attempted to collect the same amount of interest on several different dates (which cannot be correct) and, in any event, they calculated the interest amount incorrectly.[4] First, Mr. Burns explained that the amount of interest on Ms. Reynolds' account was $353.95 as of August 2012, [Filing No. 47-2 at 15], but the April 4, 2014 letter states that the interest was that same amount as of April 2014, [Filing No. 47-5]. The amount of interest cannot have been the same in August 2012 and in April 2014. Second, according to Mr. Burns, the interest rate changed several times: it was 8% from September 25, 2009 to May 31, 2013, 6% for the month of June 2013, and 5.99% from July 1, 2013 to December 31, 2013. [Filing No. 47-2 at 14-15.] Based on those rates, the Court agrees with Ms. Reynolds' calculation that the correct amount of interest would have been $343.46, not $353.95 as reflected in the April 4, 2014 letter. [See Filing No. 47 at 19-20.]

Ms. Reynolds is entitled to summary judgment on her claim under § 1692e of the FDCPA, both because Defendants have not established that she entered into a contract with AT&T Mobility that provided for the collection of interest and collection costs, and because Defendants calculated the interest amount incorrectly.

---

[4] Defendants do not respond to Ms. Reynolds' argument that they calculated the amount of interest incorrectly, instead arguing only that they did not violate the FDCPA because "the total amount of interest added to the account never exceeded 8% during the relevant period." [Filing No. 57 at 10.] As discussed below, however, the Court rejects Defendants' argument that they were entitled to collect interest at a rate of 8% in the first place.

### b. § 1692f

Ms. Reynolds also alleges that Defendants violated 15 U.S.C. § 1692f, which prohibits "[t]he collection of any amount (including any interest [or] fee…) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). The Seventh Circuit has instructed that whether or not a defendant has violated § 1692f "does not hinge on the defendant's knowledge, but rather upon how a consumer would perceive the demand letter." *Turner,* 330 F.3d at 996. Additionally, a plaintiff alleging a violation of § 1692f need not show any intent on the defendant's part. *Id.* Therefore, bona fide errors do not excuse the perpetrator from a violation of § 1692f. *Id.*

Similar to the analysis above, the Court again focuses on the fact that Defendants have not submitted into evidence a contract between Ms. Reynolds and AT&T Mobility. A simple and plain reading of the statute requires an explicit agreement authorizing the amounts Defendants attempted to collect in the April 4, 2014 letter. 15 U.S.C. § 1692f(1). Defendants argue that the "2009 Terms of Service" document is such a contract, but have not provided evidence that Ms. Reynolds ever agreed to it.

Defendants attempt to justify applying interest to Ms. Reynolds' account by relying upon Indiana Code 24-4.6-1-103, which allows for application of an 8% annual interest rate "from the date an itemized bill shall have been rendered and payment demanded on an…account closed…." Ind. Code 24-4.6-1-103(b). Again, however, Defendants have not produced a contract between Ms. Reynolds and AT&T Mobility that would create the debt in the first place. Because that is so, the Court cannot determine whether Indiana law even applied to the terms of the contract – perhaps the contract provided otherwise. Additionally, § 24-4.6-1-103 is generally used to determine the amount of prejudgment interest the losing party in a lawsuit owes. *See, e.g.,* *Easyrest, Inc. v.*

*Future Foam, Inc.*, 2008 WL 126647, *2 (S.D. Ind. 2008) ("Under Indiana law, prejudgment interest is to be awarded where the amount of damages was fixed and ascertainable…. Under Indiana Code 24-4.6-1-103, unless a different rate is specified by contract, prejudgment interest is awardable at a rate of Eight Percent (8%) per annum from the time payment was due until judgment is entered"). Defendants have not pointed the Court to any authority standing for the proposition that § 24-4.6-1-1-3 allows a debt collector to collect interest on an unpaid debt where, as here, the debt collector has not produced the contract that provides for the imposition of interest in the first place, or any other evidence that an 8% interest rate would apply.

Defendants did not produce either Ms. Reynolds' Cingular Wireless contract or any subsequent contract – specifically applicable to Ms. Reynolds – explicitly authorizing AT&T Mobility to collect interest and collection costs. Thus, Defendants are in violation of § 1692f by attempting to collect interest and collection costs without an agreement expressly authorizing such collection, and Ms. Reynolds is entitled to judgment as a matter of law on her claim under § 1692f.

### c.  § 1692d

Ms. Reynolds alleges in her Complaint that "[t]he Defendants' acts and omissions constitute a violation of 15 U.S.C. § 1692d." [Filing No. 1 at 4.] Section 1692d provides:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.
>
> (2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.
>
> (3) The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 1681a(f) or 1681b(3) of this title.

(4) The advertisement for sale of any debt to coerce payment of the debt.

(5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

(6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

15 U.S.C. § 1692d.

Ms. Reynolds does not discuss her claim under § 1692d at all in her Motion for Summary Judgment, nor has she provided the Court with evidence of any conduct by Defendants which would suggest that Defendants' actions fall within § 1692d. Specifically, Ms. Reynolds has not presented any evidence of a threat of violence, use of obscene or profane language, publication of her name on any consumer lists, advertisements for sale of her debt, or continuous telephone calls. 15 U.S.C. § 1692d(1)-(6); *see also Frye v. Bowman, Heintz, Boscia, and Vician, P.C.*, 193 F.Supp.2d 1070, 1081-82 (S.D. Ind. 2002) (denying plaintiff's motion for summary judgment on a claim brought under § 1692d because no support for the claim was provided, including evidence of any action which naturally resulted in harassment, oppression, or abuse.) Thus, Ms. Reynolds is not entitled to judgment as a matter of law on her claim under § 1692d.[5]

## IV.
### CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** Ms. Reynolds' Motion for Summary Judgment, [Filing No. 46], to the extent that it finds that she is entitled to judgment as a

---

[5] Because the Court has found that Ms. Reynolds is entitled to summary judgment on her claims under § 1692e and § 1692f, and since she does not address her § 1692d claim at all in her Motion for Summary Judgment, the Court need not, and will not, address Ms. Reynolds' additional argument that AT&T Mobility waived any right to collect interest and collection costs and so Defendants are estopped from seeking them.

matter of law on her claims under § 1692e and § 1692f of the FDCPA.  The Court **DENIES IN PART** Ms. Reynold's Motion for Summary Judgment, [Filing No. 46], to the extent that Ms. Reynolds is not entitled to judgment as a matter of law on her claim under § 1692d of the FDCPA. No partial final judgment shall enter at this time.

The Court requests that the Magistrate Judge meet with the parties to discuss the possibility of resolving Ms. Reynolds' claim under § 1692d,[6] and to address the issue of the appropriate amount of damages for Defendants' violations of § 1692e and § 1692f, before the July 19, 2016 trial in this matter.

Date:  April 26, 2016

_Jane Magnus-Stinson_
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**

---

[6] When determining whether to pursue her claim under § 1692d, Ms. Reynolds should be mindful of Fed. R. Civ. P. 11 and 28 U.S.C. § 1927.