UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SHERRY REYNOLDS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 1:14-cv-01868-JMS-DML |
| ) | |
| EOS CCA and U.S. ASSET MANAGEMENT INC., ) | |
| ) | |
| Defendants. ) | |

# ORDER

This case involves Defendants EOS CCA's ("EOS") and U.S. Asset Management, Inc.'s ("U.S. Asset Management") efforts to collect a principal amount, interest, and fees/collection costs on behalf of AT&T Mobility. AT&T Mobility claimed Plaintiff Sherry Reynolds owed these amounts after she stopped making payments on her AT&T Mobility account. Ms. Reynolds initiated this action against Defendants[1], alleging that they violated § 1692d, 1692e, and 1692f of the Fair Debt Collection Practices Act ("FDCPA"). She argued that Defendants violated the FDCPA by attempting to collect interest and collection costs not provided for in any contract between her and AT&T Mobility. Despite settling numerous other cases involving the same issue, Defendants opted to vigorously litigate this case. Ultimately, the Court granted summary judgment in favor of Ms. Reynolds on her § 1692e and § 1692f claims related to the collection of interest and costs, finding that Defendants had not provided any evidence suggesting the presence of a binding contract between Ms. Reynolds and AT&T Mobility that provided for the imposition of those amounts. [Filing No. 59 at 9-13.] The Court denied Ms. Reynolds' summary judgment

---

[1] EOS is now known as "EOS USA," and owns U.S. Asset Management. [Filing No. 47-2 at 3.] Throughout this litigation, Defendants have not differentiated between U.S. Asset Management and EOS. Therefore, the Court will refer to those entities collectively, as "Defendants."

1

motion as it related to her § 1692d claim, finding that she had not presented any evidence of a violation of that provision. [Filing No. 59 at 13-14.] On June 2, 2016, Ms. Reynolds notified the Court that she was voluntarily dismissing her § 1692d claim, [Filing No. 64], and the Court acknowledged the dismissal, [Filing No. 65].

Presently pending before the Court are Ms. Reynolds' Motion for Assessment of Attorneys' Fees and Costs, [Filing No. 70], and her Supplemental Motion for Assessment of Attorneys' Fees and Costs, [Filing No. 78]. As discussed below, the Court finds the fees and costs Ms. Reynolds requests to be reasonable for the most part, with some adjustments. Accordingly, it grants Ms. Reynolds' motion in part and denies it in part.

## I.
### RELEVANT BACKGROUND

Ms. Reynolds initiated this lawsuit on November 14, 2014, [Filing No. 1], and, after conducting discovery and attending numerous pretrial conferences (including a settlement conference), she moved for summary judgment on December 29, 2015, [Filing No. 46]. As noted above, Ms. Reynolds obtained summary judgment on two claims, and voluntarily dismissed her remaining claim. [Filing No. 59; Filing No. 64.] In the meantime, Defendants – or in some cases just EOS, if U.S. Asset Management was not named as a defendant – entered into settlements without significant litigation with seven plaintiffs who filed cases in this District asserting claims based on facts substantially similar to the facts in this case. [*See George v. EOS CCA, et al.*, 1:14-cv-0556-SEB-DML; *Smith v. EOS CCA*, 1:14-cv-01778-WTL-MJD; *Emery v. EOS CCA, et al.*, 1:13-cv-1421-LJM-DKL; *Milliken v. EOS CCA*, 1:13-cv-01748-WTL-TAB; *Hunt v. EOS CCA, et al.*, 1:13-cv-01787-TWP-DML; *Hill v. EOS CCA, et al.*, 1:13-cv-02049-RLY-TAB; *Howell v. EOS CCA*, 1:14-cv-01259-WTL-MJD.] Despite the similarity of Ms. Reynolds' claims,

Defendants chose to vigorously litigate this case (including the issue of attorneys' fees and costs) along with another substantially similar case, *Reed v. EOS CCA*, 1:14-cv-1745-JMS-DKL.[2]

After obtaining summary judgment on two of her claims, the parties agreed that Ms. Reynolds would receive $2,000 in statutory damages from Defendants, and the fee issue is now the only issue remaining in this litigation. [*See* Filing No. 78 at 1.] Ms. Reynolds now seeks a total of $26,126.25 in attorneys' fees and $1,450.23 in costs. [Filing No. 70; Filing No. 78.]

## II.
### APPLICABLE LAW

Section 1692k of the FDCPA provides that "any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of…in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3). The party seeking the fee award has the burden of proving the reasonableness of the fees sought. *Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 550 (7th Cir. 1999). Once this burden is met, then the party opposing the fee award has the burden of demonstrating why the amount sought is unreasonable. *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011).

Typically, the district court "is in the best position to make the 'contextual and fact-specific' assessment of what fees are reasonable." *Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014). Although the district court's discretion is not boundless, the United States Supreme Court "has said that there is hardly any 'sphere of judicial decisionmaking in which appellate

---

[2] A similar fee motion was filed in *Reed*, and the Court is issuing an order on that motion contemporaneously with this Order.

3

micromanagement has less to recommend.'" *Id.* (quoting *Fox v. Vice*, 131 S.Ct. 2205, 2216 (2011)).

The Court "generally begins the fee calculation by computing a 'lodestar': the product of the hours reasonably expended on the case multiplied by a reasonable hourly rate." *Montanez, 755 F.3d at 553*. "Although the lodestar yields a presumptively reasonable fee," the Court may still adjust that fee based on factors not included in the computation. *Id.* (citing *Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)*). Ultimately, "the guiding inquiry is whether 'the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award.'" *Montanez, 755 F.3d at 553* (quoting *Hensley, 461 U.S. at 434*). In calculating the lodestar the Court "need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox, 131 S.Ct. at 2216*. Accordingly, the Court "may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id.*

## III.
### DISCUSSION

Ms. Reynolds argues in support of her motion that Defendants chose to litigate this case even though they settled seven similar cases, that an award of attorneys' fees is mandatory under the FDCPA when the plaintiff prevails, that the lodestar method is applicable, that her attorneys' rates are reasonable, and that her attorneys spent a reasonable amount of time litigating the case. [Filing No. 71 at 1-13.] Ms. Reynolds submits the curriculum vitae of her attorneys, [Filing No. 70-2; Filing No. 70-5], her attorneys' itemized invoices, [Filing No. 70-3], and the Declaration of David J. Philipps, [Filing No. 70-6]. Mr. Philipps is an experienced FDCPA litigator who opines that Ms. Reynolds' attorneys have "a solid reputation for their work for consumers on FDCPA

4

lawsuits," and that their hourly rates are "at the low end of the range of rates charged in the Indianapolis market for work performed in contingent, statutory fee-shifting cases, particularly considering their experience in such matters." [Filing No. 70-6 at 20-21.] Mr. Philipps also opines that the paralegal who performed work on Ms. Reynolds' case has a rate which is within the reasonable range. [Filing No. 70-6 at 21.] Finally, he states that "[t]he records reveal that [Ms. Reynolds' attorneys] have been extremely efficient in their time, with much of the time incurred by [an associate], who has a lower rate." [Filing No. 70-6 at 21.]

In response, Defendants argue that the fees Ms. Reynolds seeks should be "drastically reduced." [Filing No. 75 at 1.] They agree that the lodestar method applies, but argue that the hourly rates requested are unreasonable, and the hours expended are unreasonable for a variety of reasons, including that: (1) time was spent on boilerplate forms and tasks; (2) time was spent on purely administrative and clerical tasks; and (3) time was spent on duplicative, excessive, and unnecessary tasks. [Filing No. 75 at 2-14.] Defendants request that the fee award be reduced to an amount not to exceed $5,000. [Filing No. 75 at 14.]

On reply, Ms. Reynolds reiterates many of her arguments, and stresses that Defendants levied an aggressive defense in this case, that her attorneys needed to tailor boilerplate pleadings to this case, that the items Defendants claim were purely clerical in nature were not, and that the attorneys did not perform duplicative work. [Filing No. 77.]

The Court will address each of Defendants' arguments in turn.

**A. Attorneys' Hourly Rate**

Ms. Reynolds argues that her attorneys' hourly rates – $300 for Mr. Steinkamp and $200 for Mr. Eades – are reasonable because they both have extensive experience with FDCPA litigation, and other courts have found comparable rates reasonable. [Filing No. 71 at 8-9.] Ms.

Reynolds also notes that in 2014 another court in this District found that a rate of $275 per hour for Mr. Steinkamp and $175 per hour for Mr. Eades was reasonable. [Filing No. 71 at 7.] She argues that her attorneys' experience on FDCPA issues has increased significantly during the last few years, so an increase to $300 and $200, respectively, is reasonable. [Filing No. 71 at 7.]

In response, Defendants cite cases from this District awarding fees of $250 per hour or less in FDCPA cases, and argue that Ms. Reynolds should have submitted the portion of her fee agreement with her attorneys which set forth the attorneys' rates. [Filing No. 75 at 4.] Defendants also argue that Mr. Philipps' opinion should be disregarded because Mr. Steinkamp and Mr. Eades regularly appear as co-counsel with Mr. Philipps in legal matters, and "vouching for the reasonableness of each other's fees is ostensibly self-serving…." [Filing No. 75 at 5.] Finally, Defendants note that Ms. Reynolds did not identify the paralegal who performed work, or discuss the qualifications of that person. [Filing No. 75 at 5.]

On reply, Ms. Reynolds argues that she has provided evidence that her attorneys' rates are reasonable, and that Defendants have not provided any evidence that the rates are unreasonable. [Filing No. 77 at 2-4.]

"A reasonable hourly rate is based on the local market rate for the attorney's services." *Montanez*, 755 F.3d at 553 (citation omitted). "The best evidence of the market rate is the amount the attorney actually bills for similar work." *Id.* "An attorney's self-serving affidavit alone cannot satisfy the plaintiff's burden of establishing the market rate for that attorney's services." *Spegon*, 175 F.3d at 556. Mr. Philipps, who Defendants describes as "a highly accomplished and well-regarded FDCPA attorney in his own right," [Filing No. 75 at 4-5], opines that Mr. Steinkamp and Mr. Eades "have developed a solid reputation for their work for consumers on FDCPA lawsuits." [Filing No. 70-6 at 20-21.] And Defendants agree that "Plaintiff's counsel are plainly qualified to

6

handle FDCPA cases….." [Filing No. 75 at 3.] But Defendants argue that courts within this District have "generally declined to award $275 [per hour] for similar work," so the Court should only award Mr. Steinkamp $250 per hour, Mr. Eades $150 per hour, and the paralegal $100 per hour. [Filing No. 75 at 4.]

There is no doubt here that Mr. Steinkamp and Mr. Eades have extensive experience litigating FDCPA cases. [See Filing No. 70-2 (Mr. Steinkamp's curriculum vitae); Filing No. 70-5 (Mr. Eades' curriculum vitae).] Indeed, Mr. Steinkamp has practiced in front of this Court in numerous FDCPA cases. Ms. Reynolds claims that her attorneys' experience with FDCPA issues has "increased significantly over the course of the past several years," [Filing No. 71 at 7], and Mr. Philipps opines that their rates are "at the low end of the range of rates charged in the Indianapolis market for work performed in contingent, statutory fee-shifting cases," and the paralegal's rate "is also well within the range of what is charged in the Indianapolis market for paralegal work," [Filing No. 70-6 at 21]. Courts within this District have found that a rate of $275 for Mr. Steinkamp was reasonable, see *Edwards v. Law Firm of Krisor & Associates*, 2015 WL 3961078, *4 (S.D. Ind. 2015); *Karr v. Med-1 Solutions, LLC*, 2014 WL 5392098, *2 (S.D. Ind. 2014), and this Court agrees. The only justification Ms. Reynolds supplies for her attorneys' increased rates is that their experience has increased, but the Court finds that this is not sufficient to show that the current rates are reasonable. Additionally, Mr. Philipps does not explain the extent of his inquiry into the rates of FDCPA attorneys in the Indianapolis area. He states only that Ms. Reynolds' attorneys' rates are at the "low end" of the range, but does not state what that range is nor how many attorneys' rates are in that range. See *Pickett*, 664 F.3d at 640 ("evidence of rates similarly experienced attorneys in the community charge paying clients for similar work and

7

evidence of fee awards the attorney has received in similar cases" is needed to support a fee request).

Similarly, Mr. Philipps simply states that the paralegal's rate of $125 per hour is well within the range of what is charged for paralegal work in Indianapolis, but does not further explain what that range is nor the type of work with which it corresponds. Ms. Reynolds notes that this Court accepted an hourly rate of $100 per hour for paralegal work in a 2012 decision, and argues that "[a]fter more than four (4) years have passed, it [is] logical that the rates for paralegals should increase as well." [Filing No. 77 at 4.] But she does not explain why a 25% increase in that rate is justified simply because some time has passed.

In sum, because Ms. Reynolds has not adequately justified her attorneys' or the paralegal's rates, and based on other awards made in the Southern District of Indiana, the Court will reduce those rates to $275 per hour for Mr. Steinkamp, $175 per hour for Mr. Eades, and $100 per hour for the paralegal.

### B. Time Expended

Ms. Reynolds asserts that her attorneys spent a reasonable amount of time litigating this case, and notes that Defendants settled several other nearly identical cases yet chose to aggressively litigate this case. [Filing No. 71 at 1-2.] Ms. Reynolds also argues that the amount of attorneys' fees requested far exceeds her award in this case because Defendants chose to litigate the case, and not because of any action on Ms. Reynolds' part. [Filing No. 71 at 3.] She points out that the parties engaged in extensive discovery which required taking a deposition in Massachusetts, and litigated the case to summary judgment which required extensive research, drafting, and revising. [Filing No. 71 at 3.]

Defendants argue in response that the hours Ms. Reynolds' attorneys expended are unreasonable for various reasons discussed below, and should be reduced from an award of $24,444.30 to an award of $5,000. [[Filing No. 75 at 5-14](#).]

In her reply, Ms. Reynolds addresses each argument raised by Defendants, and argues that Defendants did not provide any evidence that the number of hours her attorneys expended are unreasonable. [[Filing No. 77 at 3-15](#).]

The Court notes at the outset that it finds significant that Defendants settled numerous substantially similar lawsuits, yet chose to litigate this lawsuit and the *Reed* matter. While the fees and costs request is relatively large when compared to Ms. Reynolds' $2,000 recovery, Defendants made a decision to litigate this matter despite apparently recognizing weaknesses with their position when settling other, similar cases. The Court rejects outright Defendants' request that the Court reduce the fee award to $5,000 – such an award would reflect just over eighteen hours of Mr. Steinkamp's time at a rate of $275 per hour, less than twenty-nine hours of Mr. Eades' time at a rate of $175 per hour, or somewhere in between for a combination of the two. Given that the parties engaged in extensive discovery, Ms. Reynolds' attorneys deposed Defendants' Rule 30(b)(6) witness in Massachusetts, the parties attended a settlement conference and other pretrial conferences, and the parties fully briefed a summary judgment motion, an award of $5,000 would not be reasonable. That said, the Court will consider Defendants' specific arguments regarding the time Ms. Reynolds' attorneys spent on certain tasks.

### 1. *Boilerplate Forms and Tasks*

Defendants argue that Ms. Reynolds' attorneys use boilerplate forms, such as complaints, affidavits, demand letters, and discovery requests in the many FDCPA cases they work on, and that their time entries related to drafting, reviewing, or modifying those boilerplate documents

9

should be reduced. [Filing No. 75 at 6-7.] Specifically, they request that the fee award be reduced by $1,150.00, accounting for 6 hours of work on the part of Mr. Steinkamp and Mr. Eades. [Filing No. 75 at 6.]

Ms. Reynolds responds that while her attorneys may use boilerplate forms as models, they "must be tailored to meet the case at hand and such modifications take[] time." [Filing No. 77 at 6.] She notes that her attorneys' approach "is much more efficient and cost-effective than having Plaintiff's counsel reinvent the wheel with each pleading for each case." [Filing No. 77 at 6.]

The Court has reviewed the entries Defendants argue are excessive, and finds that the amount of time Ms. Reynolds' attorneys spent on each task Defendants object to was reasonable. While boilerplate documents provide an efficient starting point, the attorneys must still tailor the documents to the particular case and that takes time. The entries Defendants object to do not reflect that excessive time was spent doing so, and the Court declines to reduce the requested fees on that basis.

      *2. Administrative and Clerical Tasks*

Defendants contend that "attorney or paralegal time should not be billed for administrative or clerical tasks," and "such items are presumed to be part of the overhead of running a legal practice and are not properly recoverable." [Filing No. 75 at 7.] Defendants list several tasks they argue are administrative or clerical, and request that $1120.00 be subtracted from the requested fee award. [Filing No. 75 at 7-8.] They specifically note two entries where a paralegal billed a total of .40 hours (twenty-four minutes) to file notices of appearance on behalf of Mr. Steinkamp and Mr. Eades. [Filing No. 75 at 8-9.]

Ms. Reynolds argues that paralegal time spent filing documents is compensable, that electronic filing is not routine clerical work, and that attorney time spent reviewing filings is compensable. [Filing No. 77 at 6-8.]

The Court disagrees with Defendants' characterization of the tasks they object to as purely administrative and clerical in nature. Defendants rely upon a Seventh Circuit case holding that time a paralegal spent "organizing file folders, [engaging in] document preparation, and copying documents" was not compensable. [Filing No. 75 at 7 (citing *Spegon*, 175 F.3d at 553).] Here, the paralegal performed more substantive tasks such as redacting exhibits, drafting and filing pleadings, and preparing discovery requests. [Filing No. 75 at 7-8.] These tasks are not clerical, but rather require the paralegal to ensure that documents are ready for service on opposing counsel or filing – whether it be making sure a document is properly redacted, is free of errors, or is ultimately properly filed electronically. Further, the Court does not find it unreasonable that Mr. Steinkamp and/or Mr. Eades reviewed certain pleadings after they were filed by Defendants, or drafted emails to opposing counsel. These tasks may require certain knowledge of the case. Defendants have not provided any evidence that the tasks they object to as clerical or administrative were on the same level as organizing file folders, copying documents, and the like. The Court will not reduce the requested fees on this basis.

### 3. *Duplicative, Excessive, and Unnecessary Tasks*

Defendants list several tasks that they argue are duplicative because they were also performed in the *Reed* case. [Filing No. 75 at 9-12.] They argue that Ms. Reynolds "acknowledged [she] had no factual support" for her § 1692d claim, so "additional reductions should be made to reflect Plaintiff's abandonment of such claim." [Filing No. 75 at 12.] Defendants claim that the attorneys' time for researching and drafting the summary judgment motion is excessive because

11

the "same motion for summary judgment and reply brief" were filed in *Reed*. [Filing No. 75 at 11.] They also object to the attorneys "block billing" entries, arguing that the Court cannot determine whether the time spent was reasonable; to time spent filing documents under seal, because there was already a protective order in the case; and to time spent representing Ms. Reynolds in her bankruptcy. [Filing No. 75 at 12-14.] Defendants seek to reduce the fee request by $11,721.25 for these issues.

Ms. Reynolds responds that Defendants have not provided any evidence that her attorneys' work was duplicative. For example, Ms. Reynolds argues that two attorneys attended the settlement conference because both this case and the *Reed* case were being addressed, and Defendants have not provided any evidence that this was unreasonable. [Filing No. 77 at 9-10.] She also argues that she agreed to dismiss the § 1692d claim because she only needed to succeed on one of her claims in order to establish liability under the FDCPA, so dismissal was in the interest of judicial economy. [Filing No. 77 at 10-11.] Ms. Reynolds contends that the time spent researching, preparing, and editing the summary judgment brief was reasonable, and that her attorneys efficiently litigated the case. [Filing No. 77 at 11-12.] She also argues that her attorneys did not "block bill" and that block billing is not prohibited in any event, that the time spent drafting and filing a motion to seal was justified because it protected Defendants' proprietary interests and Ms. Reynolds' interests, and that the entries which Defendants contend are related to Ms. Reynolds' bankruptcy are not and Ms. Reynolds has not filed for bankruptcy. [Filing No. 82 at 12-14.]

The Court will address each of Defendants' arguments, but will do so with the following previously noted principle in mind: in considering a motion for attorneys' fees, the Court "need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting

fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox*, 131 S.Ct. at 2216. Accordingly, the Court will not nitpick the attorneys' invoices, but rather will attempt to reach what it finds to be a fair result. Further, the Court will consider the issues Defendants raise in the context of this lawsuit, being mindful of the fact that Ms. Reynolds succeeded in obtaining summary judgment on two of her three claims,[3] and that Defendants chose to vigorously litigate this case after settling numerous cases involving the same issue. *See Montanez*, 755 F.3d at 553 ("the guiding inquiry is whether 'the plaintiff achieved a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award'"). Defendants' decision to litigate was not without risk, one of which was that they might be liable for attorneys' fees and costs if they did not prevail.

First, as to work that Defendants claim is duplicative between this matter and *Reed*, the Court finds that Ms. Reynolds has presented sufficient evidence that the time entries Defendants point to are not duplicative. The invoices that Ms. Reynolds submitted indicate that many of the time entries relate to tasks performed for both this matter and *Reed*, and were split evenly among the two cases. [*See* Filing No. 70-3 at 2 (noting on first page of invoice that "**" indicates "Time spent on Reed/Reynolds. Split between cases").] Defendants have not presented any evidence that this is not the case. For items that are not notated as split among the two cases, these items appear to be particular to this case. For example, a February 10, 2016 entry stating "Began Drafting Reply in Support of Summary Judgment" for 2.30 hours appears to be specific to this case. The reply brief in this case was not identical to the reply filed in *Reed*, and this entry does

---

[3] The Court rejects Defendants' argument that by dismissing her § 1692d claim, Ms. Reynolds acknowledged that she had no factual support for that claim. Instead, in dismissing her claim Ms. Reynolds stated that she had already prevailed on her § § 1692e and 1692f claims, and only needed to prevail on one claim to establish liability. [Filing No. 64.]

13

not appear on this date in the *Reed* invoices. Additionally, the Court does not find it unreasonable that both Mr. Steinkamp and Mr. Eades attended the settlement conference. The only entries that give the Court pause are the following two: (1) 4/13/2015 – Drafted discovery dispute letter (EOS) & Reviewed File and Responses (JTS) - .80 – 240.00; and (2) 4/13/2015 – Drafted discovery dispute letter (US Asset) & Reviewed File and Responses (JTS) – .80 – 240.00. Defendants claim that the discovery dispute letters to EOS and U.S. Asset Management were the same. Ms. Reynolds does not address these entries in her reply brief. Accordingly, the Court finds it proper to include only half of the time spent on these tasks in the fee request, and will subtract $220 from the fee award.[4]

Second, Defendants point to two entries that it argues indicate Ms. Reynolds' attorneys engaged in "block billing." [Filing No. 77 at 13-14.] The Court does not find these entries problematic. Issues with block billing can arise when attorneys list multiple tasks, but only provide the total time to accomplish all of those tasks. In that situation, it is difficult to judge whether the time spent was reasonable. Here, the first entry includes four tasks that are: "[p]repared for deposition, reviewed discovery responses, reviewed legal research and traveled to Boston." [Filing No. 75 at 12.] It indicates that this work was performed both in this case and in *Reed*, so the time was split. The time associated with this case is 1.5 hours, meaning a total of 3 hours was spent. This seems imminently reasonable, considering that travel from Indianapolis to Boston is one of the tasks. The second entry includes two tasks: "Reviewed Legal Research & Finished Reply." [Filing No. 75 at 12.] These tasks were spent only on this case, and the indicated amount of time

---

[4] Mr. Steinkamp spent 1.6 hours on these two entries, so the Court has subtracted .8 hours at the $275/hour rate, for a deduction of $220.

– 4.20 hours – is reasonable.  The Court declines to reduce the requested fee amount by these two entries simply because they include more than one task in the entries.

Third, Defendants argue that time spent filing a motion to maintain documents under seal should not be recoverable because there was a protective order in place.  [Filing No. 75 at 13.]  A protective order would not protect the public from viewing exhibits filed by the parties, and the Court will not second-guess Ms. Reynolds' attorneys' litigation strategy and decisions.  Therefore, it will not subtract the 1.5 hours the attorneys spent filing the motion to maintain documents under seal and performing tasks related to the motion.

Finally, Defendants argue that two time entries relate to the attorneys' "bankruptcy representation of Plaintiff."  [Filing No. 75 at 13.]  The first entry states: "Reviewed Defendant's letter pursuant to bankruptcy representation and notices/calculated interest and fees." [Filing No. 75 at 13.]  Although it mentions "pursuant to bankruptcy representation," the entry appears to relate to the amount that Defendants claimed Ms. Reynolds owed in interest and collection fees – which was an issue in this litigation.  The second entry – "Meeting with client to discuss the content and legal [e]ffect of Defendant's letter" – appears to relate to this case, and not to a pending bankruptcy.  In any event, Ms. Reynolds states that she has not filed for bankruptcy, [Filing No. 77 at 15], and Defendants have not provided any evidence that she did.  The Court will not subtract the time associated with these entries.

### C.  Supplemental Fees and Costs

Ms. Reynolds also seeks fees and costs associated with litigating the pending motion. [Filing No. 78.]  In support, she submits an affidavit from Mr. Steinkamp and an invoice reflecting $3,132.18 in additional fees and costs.  [Filing No. 78-1; Filing No. 78-2.]  Defendants did not file a response to the Supplemental Motion.  The Court has reviewed the invoice, and finds the

supplemental fees and costs to be reasonable, subject to the adjustment of the hourly rates consistent with the Court's discussion above. Accordingly, it will include the supplemental amount, as adjusted, in its award of fees and costs.

In sum, the Court finds that $275 per hour for Mr. Steinkamp, $175 per hour for Mr. Eades, and $100 per hour for the paralegal are reasonable rates, and that the attorney and paralegal time spent on this case, except for the small amount of duplicative time addressed above, was reasonable. The Court has calculated that Mr. Eades spent 29.5 hours on this case, Mr. Steinkamp worked 56.65 hours, and the paralegal worked 25.85 hours.[5] Given that the case has been pending for over two years, extensive discovery took place, numerous pretrial conferences and a settlement conference were held, and the parties briefed a summary judgment motion, these amounts of time are reasonable. After performing a lodestar analysis, the Court finds that Ms. Reynolds is entitled to $23,106.25 in attorneys' fees[6] and $1,450.23 in costs.

## IV.
### CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** Ms. Reynolds' Motion for Assessment of Attorneys' Fees and Costs, [Filing No. 70], and **GRANTS IN PART** Ms. Reynolds' Supplemental Motion for Assessment of Attorneys' Fees and Costs, [Filing No. 78]. The Court awards Ms. Reynolds $23,106.25 in attorneys' fees and $1,450.23 in costs. Final judgment shall issue accordingly.

---

[5] The invoices Ms. Reynolds provided did not include the total number of hours that each attorney and the paralegal worked. This made the Court's review of the invoices, and subsequent calculation of the fees at the reduced rated, unnecessarily cumbersome. Any further fee motions must be supported by invoices that include such a break-down.

[6] The $23,106.25 figure includes $20,301.25 in attorneys' fees from the initial motion (which factors in the $220 deduction), and $2,805 in attorneys' fees from the supplemental motion.

Date: 11/22/2016    _____
                    Hon. Jane Magnus-Stinson, Judge
                    United States District Court
                    Southern District of Indiana

**<u>Distribution via ECF only to all counsel of record</u>**